Good morning, Your Honor. May it please the Court. My name is Mary Ann Royal. I'm here on behalf of Joshua Rodgers, the defendant. I would like at the outset to ask to reserve three minutes of my time. You may, but it'll continue to show the total time, so you'll have to help keep track. Okay. Thank you. This morning I would like to discuss two topics, since the time is short. The first is the stop, and the second is the search. The stop was not supported by reasonable suspicion in this case. The test for reasonable suspicion requires specific articulable facts that support objectively reasonable inferences that the defendant was engaged in or about to be engaged in criminal activity. In this case, the specific articulable facts were not present, and also the officer's inferences were not objectively reasonable. The reason cited for the officer for stopping the vehicle was that it was a different color than the registration. However, he also indicated in his testimony at the suppression hearing that that is not a violation of state law. Well, just for purposes of analyzing the officer's testimony at this point, the district court found him to be credible on those issues, right? So we have to, we basically have to, there was only one point where the district court said something about when the officer was asked, is there anything more, and he said no, I don't think that was really what he meant, but he said otherwise the officer's credible, right? I'm not questioning the officer's credibility. Right. I'm questioning the court's legal conclusion that the search was based on reasonable suspicion. Well, it might not be illegal to repaint your car, but when you're driving at, what, 3 or 3.30 in the morning in an area that's a high-crime area, that is known for car theft, doesn't that raise a reasonable suspicion if it doesn't match? Well, Your Honor, under ward law, there has to be some indication of criminal activity. It can't just be driving through the area. And because the state has chosen not to criminalize that particular act, there's no basis to suspect anything. Also, the officer had access to the WASIS database, which would have indicated whether the vehicle was stolen. He did not say that he checked that. However, he did check the Department of Licensing database, and the Department of Licensing database indicated that the car was not in stolen status, that the license plate checked with the vehicle in all respects except for color, and also that there was nothing else amiss in terms of the actual behavior of the defendant. But he testified in his expertise that people switch license plates when there's a discrepancy in, you know, what matches. And so isn't that just enough to look into it? Well, he didn't have reliable information to believe that the car was stolen, and his expertise in this case could amount to unconstrained discretion because there were no specific facts. There was no objectively reasonable inference that could be drawn from the fact that the car is a different color, since it's not a violation of state law. If he had not had a seat belt buckled, if he had a taillight that was out, if he had a headlight that was out, any of those things would be sufficient. Are you saying you need state law violation in order to get enough cumulative facts to have a stop? You have to have some indicia of wrongdoing. In the case cited by the government, the person was seen in a dark area. There were no one else around, and he had a truck of an unusual configuration, and he seems to be in an area that he wasn't supposed to be in. So those were suspicious activities. Here, in and of itself, driving through a road adjacent to Interstate 5, no matter what time of day or night, is not inherently suspicious. And the officer didn't really say that it was inherently suspicious. Well, let's just assume the officer can, as a matter of law, get past that point. And then I'm interested more in the search of the vehicle in connection with SF. There was no justification for the search of the vehicle under United States v. Ross. If the officer has probable cause to believe that the vehicle contains contraband, he may search. The officer specifically stated he did not believe the vehicle contained contraband. What he believed was that it contained, quote, of her new crime of not giving false information about her identity. However, also in Washington State, there's no requirement for a passenger to carry identification, and there's no requirement, even if you haven't committed an offense yourself, to even properly identify yourself. Well, she's already lied. She looks very underage. I mean, two people have said she looks 12 years old, and he's 51. He's given inconsistent statements about apparently they're different races. He's 51. She looks 12. It's 3.30 in the morning. It's a high juvenile prostitution area and all of that. I'm wondering, you know, why can't he see who this person really is? She's already lied about who she is. And, you know, I'm thinking that, you know, he says she might be a runaway. You know, she might be a juvenile prostitute or whatever. Why can't he look within her lunge area to see what evidence there is of who she is? Maybe she should go home to her parents right there. Well, if the officer wanted to. . . Maybe she's been kidnapped. You know, I don't know. If the officer wanted to exercise his community caretaking function, he could have taken her into protective custody. Also, she had a warrant for her arrest, so he had probable cause to arrest her. And he knew of the warrant before he did anything else, because he did before the other officers arrived. What was he going to arrest her for? She had a juvenile arrest warrant for robbery, too. So he had probable cause as to the passenger. Well, someone had that arrest warrant, but it was the same, but the date was still off, right? She was still claiming she was 19, and the person that had the arrest warrant was 16, right? That's correct, but he could have. . . There's more information in the warrant that he could have asked her for. He could have asked her to empty her pockets to see if she had ID. There was no purse or bag visible. She'd been in the car. No, there's no reason to connect that he should go into the car looking for ID. Right, he didn't have probable cause as to the defendant. It was the defendant's car. Let me tell you what also struck me as odd here. To the extent that she is 18 or 19 or over, the officer seemed to testify, well, people that age tend to carry ID, and yet if he thinks that she's really underage and he's going for it, then that doesn't make any logical sense. Right, he didn't believe her. Right, right. So he's, like, got this. . . he's got two things going crosswise here. There's nothing that she could have said that would have satisfied him. He wanted to search. What did he search exactly? He searched the passenger, quote, lunch area of the car, which included. . . What is that? He included the area around her seat, the glove compartment, and the console in the center of the car. Okay, and what he found, the contraband was found in the car? In the console, he found contraband. When she was in the back seat? Or was she in the passenger seat? He was standing behind the car with two officers. No, but when she was seated in the car, when he initially approached. . . Bed seat. Bed seat passenger? Yes. Okay, so the console. . . She's out of there. Out of the car. Yeah, she's not anywhere near it. No chance to throw out any contraband, no access. That's correct. No concern of safety. That's correct. I would like to reserve the remainder of my time. Yeah, you may. Thank you. We'll give you two minutes. Good morning. May it please the Court. My name is Jill Otake and I represent the United States in this matter. To address Your Honor's concerns that were just raised. . . Sir, are you Jill? Did you say you're Jim? I'm Jill. Jill, oh. There's a typo on there. Okay. To address Your Honor's concerns about, you know, why would the officer expect a 16-year-old to have an identification? Well, first of all, in this state, 16 years old is old enough to drive. Secondly, it makes sense, as Judge Callahan pointed out, for him to want to identify for sure that this is the person who has the warrant. Well, he didn't, you know, he didn't search her for any identification. He didn't ask her if she had identification there, did he? He did ask. . . My recollection is he asked her if she had identification and she denied it. And he said, well, people who are that age, like 19 or above, usually have identification. That's true. So if he really thought she was underage, that doesn't really justify his statement, oh, well, people who are older usually carry it around. Well, I think that maybe the more proper question to have asked him would have been, do you expect a 16-year-old to have identification? But nobody asked him that question. That's true. But I think that you can reasonably infer that it makes sense that a 16-year-old. . . That might make sense, but that's not what happened. I mean, the real issue here is he wanted to search the car. And so basically you have Mr. Rogers. He hasn't so far done anything wrong. He painted his car right so far. That's all he's done, which isn't illegal, right? That's correct. Okay. She's outside the car, so there's no concern that she's going to throw out any contraband, et cetera, right? That's correct. And is there any suspicion at this point that there's any contraband in the car? Well. . . Yes or no? No. Okay. But what I guess I'd like to point out is that it doesn't need to be a suspicion of contraband per se. It makes sense that officers would be able to look for evidence of a crime if a magistrate would have approved a warrant for evidence. It doesn't need to be contraband. How would they? Do you agree that they would have had to have sufficient cause to get a warrant in order to do this? Yes. So where is the cause to get a warrant you're calling the magistrate? This girl is believed to have committed two different crimes, and the two crimes are lying to law enforcement and obstruction of justice. The identification would have served to prove. . . The obstruction being? Lying about who she is. And the warrant. . . Lying about what? She said her age? Yes. Lying, I guess, about her identity. And so the officer could have gotten a warrant to get her identity out of that car. There's nothing in the case law that limits searches to contraband, and it makes sense that the case law doesn't do that because otherwise officers would not be able to search for drug ledgers, for weapons that are illegal otherwise. Well, it depends on. . . Okay. You didn't cite or rely on Gant, is that right? That's correct. We relied on Ross. Okay. And Ross, in effect. . . Well, both of those relate to what is a very significant exception to the warrant requirement, which is in the vehicle context, right? That's correct. So you have both Gant and you have Ross. And as I understand Ross, it's really looking at not the search so much incident to the rest, but if there's belief that there's, as it says, contraband concealed somewhere within the vehicle. That's correct. Okay. What is the contraband here? I'm just reading from the case. Great. And I guess what I'm urging the Court is that while there is no contraband here, I believe the Ross decision is not specific to contraband and can be read to allow for the search of evidence. And the reason why the Ross case supports that is if you look at the rationale behind the Ross case, basically what it is saying is that if the officer could have gotten a search warrant from a magistrate judge allowing for the search of the vehicle because he had probable cause to believe a crime has been committed, then he is entitled to search the car for evidence of that particular crime. I don't think that Ross hinges in any way on the concept of the evidence specifically being contraband. And like I said, it makes sense that it wouldn't because officers would be able to get a search warrant to search for other indicia of crimes other than contraband. For example, if it were a violent crime situation. Does it have to relate to the particular crime that the person is being arrested for? Not under Ross. As long as there is probable cause to believe that an offense has been committed, then under Ross and the officer would have been able to get a search warrant for that vehicle, then under Ross the officer is entitled to search that car. What's the basis to think that there's identification in the car? I think it makes sense, Your Honor, that first of all. He's arresting her because she is not 19. He's not yet arrested her. Well, that's what he's going to arrest her for, right? And we've got to have some crime that we're talking about. What's the crime? Is it the arrest warrant or is it the flim-flamming the police? It's the new crime of obstructing of justice and making false statements. Okay. So that's the crime. That's correct. And so evidence of that crime would be her identification showing that she has lied to the police. Well, isn't there also evidence of whether she's the person in the warrant too? I mean, what I'm struggling with is, and I don't know how it fits exactly into this construct, that you've got a 51-year-old man with someone that looks really young in the car in a high juvenile area. She's already lied. He's given inconsistent reasons of why she's there. You know, she may have a warrant for her arrest out. There's some things that indicate to match. But do you really want to arrest a juvenile if it's not the right person? You know, if the person's a runaway, if they're in any sort of, you know. But how does this all fit in the, because obviously I think that the district court was saying, hey, there's a whole lot more here and the officer needed to find out who this person was, how old she was and all of those things. How does it fit into this construct of these cases? And I guess, Your Honor, it fits into the construct of these cases in the sense that, for all the reasons that you just described, I mean, she's lying about her age. Why would she be lying about her age in this circumstance? I mean, that in itself is concerning. She looks younger. And under the circumstances, it's a high juvenile prosecution area. She's with somebody who's 37 years older than she is, who she's obviously not related to. There's motels surrounding the vicinity, which was the testimony. Let's say we get her ID and she's still 16. Does that make her a prostitute? No, that doesn't make her a prostitute. You know, you keep throwing out all these facts, but they don't have anything to do with this case in terms of, the real question is when you stop somebody and they lie about their age, does that give you carte blanche to search the whole car? That's the rule you would have us invoke. No. Respectfully, Your Honor, no, that's not the rule I would have you invoke. What would be the rule here? That he would be entitled to search the lunge area of the passenger for identification, which is what he did. He did not search the trunk. He did not search the driver's seat. Under the driver's seat, he did not search the back seat of the car. But, counsel, you agree that he would have to have probable cause to believe that a crime occurred. Yes. I don't see that the district court ever found probable cause. I, the district court seems to think this is good police, seems to be finding this is good police work because there was suspicion of this, suspicion of this, more suspicion, more suspicion. But I don't see any finding that there was probable cause to think that a crime had occurred. Can you help me with that? Well, the court does mention the fact that she was lying about her age. Is there a finding of probable cause? There is not an actual finding of probable cause, Your Honor, but I think the record supports a finding of probable cause. And the reason why the record supports a finding of probable cause is because of all of the facts, that this girl looks very young. She gives a date of birth where the year is incorrect. She's in suspicious circumstances. Did you argue there was probable cause on this? We did. In our briefing before the district court, we did argue that there was probable cause, and we argued it orally as well. Could you go back to the beginning? Because that's where counsel started, and then, of course, we got on to this subject. So you appropriately started here because that's the topic we were on. But she made the argument that at the time he is stopped, the only reason to stop him is because his car is painted a different color than the registration. And that is, I respectfully just – Is that enough to – That alone, no. But what we have here is a multitude of other circumstances. We have the officer's training and experience, and he testified, quote, I've encountered it on numerous times where they, car thieves, are able to match make, model, color, and even year to the license plate. We've got the fact that it's a high-crime area known for possession of stolen vehicles. It's 3.30 in the morning, and we have the discrepancy with regard to the vehicle. So taken separately, are each of those things innocent? Absolutely. Taken together under the totality of the circumstances, which you are required to do, does that rise to a reasonable suspicion? No, we've been kind of leery about relying on the high-crime area as a basis. And here, if it's not illegal to repaint your car, you don't have to re-register or re-tell the Department of Motor Vehicles. There's no actual, what is the suspicion of criminal activity here? Well, the suspicion of, I understand Your Honor's concern about the high-crime area. But what he had was the fact that, based on his training and experience, this is the sort of thing that car thieves do. Isn't it ironic he'd stopped this guy before for the same thing? It's ironic, but the discrepancy. And, of course, that turned out he didn't have a stolen vehicle then either. And the district court found him entirely believable and said he stood well under cross-examination. And he testified that he did not recall when the prior incidents were that he stopped this vehicle. And so I think, Your Honors, under the totality of the circumstances, the stop is justified, the search was supported by probable cause, and the government respectfully requests that you affirm the conviction in this matter. Thank you. Thank you. Your Honor, Your Honors, first of all, with respect to the probable cause for the search, there was no probable cause for the search. There was probable cause to arrest the passenger because of the outstanding warrant. In Washington, the warrants are required to particularly describe the person. And in this case, birth dates are not required as part of the warrant. They said that, I mean, there's been a mix and match of it, but really what the officer had probable cause to arrest her for was the obstruction and the lying to the officer and, therefore, the identifications related to that crime. Well, that's not even correct, Your Honor, because under Washington law a passenger has no requirement to identify themselves to an officer, and she was not suspected of a crime at the time that he asked her for her identity. That's cited on page 21 of the opening brief. Unless the passenger was committing some wrongdoing or some infraction like not wearing her seatbelt, the officer had no reason to consider her having committed a crime. After he found out that she had the warrant, he had a duty to arrest her. However, the warrant did not implicate the driver in any way. The warrant was for her arrest. And the new crimes were speculative, and she was not charged with those crimes. So it basically falls under Gantt, because under Gantt, the person was arrested in his car for a motor vehicle violation, and when the officer stopped him, they found out more about him, and then they searched his car. But the fact was that was not upheld, because that was a violation of the law. So the new crime is irrelevant, unless in the case of Ross, where the officer saw a bullet on the seat of the car, then they had grounds to go into the car. But there was nothing here in plain view. Nothing was seen, and there was no violations. For those reasons, I would ask, and all the others in the brief, I would ask your honors to reverse the findings of the district court. Thank you. Thank you.
judges: Schroeder, McKeown, Callahan